UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DALMAC REALTY LLC, | ) | 3:24-CV-00942 (SVN) |
|    *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SCOTTSDALE INSURANCE | ) | |
| COMPANY, | ) | October 30, 2025 |
|    *Defendant*. | | |

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this insurance coverage dispute, Plaintiff Dalmac Realty LLC alleges that Defendant Scottsdale Insurance Company improperly denied it insurance coverage for damage sustained to its property after a water line burst, resulting in the collapse of a main floor joist and a sudden settling of the building. *See* Am. Compl., ECF No. 20 ¶ 8. Plaintiff seeks a declaratory judgment that Defendant is required to cover its losses (styled as Count One), and alleges a breach of contract claim (Count Two). Defendant has moved for summary judgment on both claims asserted against it. Mot. for Summ. J., ECF No. 41. Plaintiff opposes Defendant's motion. Pl.'s Opp., ECF No. 50. For the reasons set forth in this ruling, Defendant's motion for summary judgment is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The following facts, drawn from the parties' Local Rule 56 statements, are undisputed except as otherwise noted.[1]

### A. The Insurance Policy

The amended complaint alleges that Plaintiff is a Connecticut-based limited liability company that operates several commercial properties, including a building located at 76 Union Street, Vernon, CT 06066 (the "Building"). ECF No. 20 ¶ 2. Defendant, an insurance company, issued Plaintiff an insurance policy for the time period of June 24, 2021, through June 24, 2022, bearing policy no. CPS7390268 (the "Policy"). *Id.* ¶ 6; Def. L.R. 56(a)1 St., ECF No. 41-1 ¶ 1; Pl.'s L.R. 56(a)2 St., ECF No. 56 ¶ 1. The Policy provided commercial general liability coverage and commercial property coverage for the Building. ECF No. 56 ¶ 2; ECF No. 41-1 at 24.

The Building and Personal Property Coverage Form of the Policy provides, "[w]e will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." ECF No. 41-1 ¶ 3; Def.'s Ex. A, ECF No. 41-1 at 93. The Policy also describes certain events that are *excluded* from coverage, stating in relevant part:

> **B. Exclusions**
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of

---

[1] In opposing Defendant's motion for summary judgment, Plaintiff did not file a Local Rule 56(a)2 Statement until prompted by the Court. *See* Order, ECF No. 52. The Local Rule 56(a)2 Statement that Plaintiff ultimately filed does not comply with Local Rule 56, which requires "reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c)." *See* ECF No. 56. Although Defendant's Local Rule 56(a)1 Statement contains twenty-six facts, Plaintiff has responded to only five of those facts, noting that each is "deemed admitted" in whole or in part; where a fact is "[d]eemed admitted as to policy language" Plaintiff argues that there is a "question of fact as to whether policy language excludes or precludes coverage as Defendant contends." *See id.* Where appropriate, the Court has deemed admitted certain of the facts set forth by Defendant, as permitted by the Local Rule, since Plaintiff did not provide citations to evidence in the record to support its arguments in the Local Rule 56(a)2 Statement that there are disputed questions of fact. *See* Local Rule 56(a)3.

any other cause or event that contributes concurrently or in any sequence to the loss.

\*\*\*

**b. Earth Movement**

(4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in b.(1) through (4) above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

\*\*\*

2. We will not pay for loss or damage caused by or resulting from any of the following:

\*\*\*

    d.(1) Wear and tear;
    (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
    (3) Smog;
    (4) Settling, cracking, shrinking or expansion;

\*\*\*

But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in a "specified cause of loss"[2] or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

---

[2] The Policy defines "specified causes of loss" as including water damage, among other types of weather events. ECF No. 41-1 at 131. It then defines water damage, in relevant part, as "[a]ccidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam." *Id.*

ECF No. 41-1 at 122, 124.  The parties do not dispute that the Policy contains this language.  ECF No. 56 ¶¶ 3–5.

### B. The Property Damage

On or around April 22, 2022, Plaintiff sustained damage to its Building.  ECF No. 20 ¶ 8. According to Plaintiff, "a sudden and catastrophic break in a water line" caused "hundreds, if not thousands of gallons of water to disburse in the basement around the foundation and under the main support columns, thus collapsing a main floor joist."  *Id.*  A "sudden settling of a main portion" of the Building occurred thereafter, rendering the Building unsafe for residents.  *Id.*  On that same day, the Town of Vernon condemned the Building for safety reasons and ordered Plaintiff to immediately relocate the Building's four tenants to alternative housing at Plaintiff's expense.  *Id.*

As a result of these events, Plaintiff alleges that it incurred approximately $100,000 in construction repair costs, including costs associated with contractors, engineers, materials and town permit fees, and over $10,000 in relocation expenses.  *Id.* ¶ 13.  Additionally, Plaintiff alleges that it lost eight months of rental income from the Building's tenants during the period of May through December of 2022.  *Id.*

### C. The Insurance Claim

Plaintiff sent Defendant a notice of claim regarding the damage to the Building, which Defendant received on April 22, 2022—the same day the loss occurred.  ECF No. 41-1 ¶ 6.  The Court notes that neither party provided a copy of Plaintiff's notice of claim and it is therefore unclear which provisions of the Policy Plaintiff invoked and what claims it raised.  For its part, Defendant proffers evidence that suggests that Plaintiff submitted claims for both "collapse damage" and "loss of business income and extra expenses as a result of the city condemning the building."  Def.'s Ex. B, ECF No. 41-1 at 153.  These claims were assigned different claim

numbers. *See* ECF No. 41-1 at 153 (listing Plaintiff's collapse damage claim as claim no. 02086919) and ECF No. 62 at 1 (listing Plaintiff's business expense claim as claim no. 02088329).

Thereafter, Defendant retained EFI Global as an engineering expert to determine the cause and extent of the damage to the Building. ECF No. 41-1 ¶ 8. In an engineering report, dated May 17, 2022 (the "EFI Report"), EFI Global concluded that soil consolidation was the cause of the damage, explaining as follows:

> The cause of the settlement of the brick pier resulting in the movement of framing above was due to the consolidation of soils under the brick pier. Soil Consolidation is the mechanical process by which soil changes volume gradually in response to change in pressure. Changes in pressure can occur when the soil is saturated typically from groundwater and then the water diffuses away from the area resulting in change in pressure and ultimately shrinkage in volume of the soil.

*Id.*; *see also* Def.'s Ex. C, ECF No. 41-1 at 163–64.

By letter dated May 17, 2022, Defendant denied Plaintiff's claim and declined to remit payment, finding that Plaintiff could not recover damages under the Policy because the damage to the Building resulted from soil consolidation—an excluded peril. Def.'s Ex. B, ECF No. 41-1 at 158. Defendant's letter cited, in relevant part, to the Policy's "Earth Movement" provision and explained that the Policy "excludes from coverage damage caused directly or indirectly by earth sinking or shifting and soil conditions, regardless of any other cause that contributes concurrently or in sequence to causing the loss," as well as damage caused by "collapse, loss of structural integrity, separation of parts of a building, and related settling, sagging, and cracking." *Id*. Defendant's letter also enclosed a copy of the EFI Report. ECF No. 41-1 ¶ 7.

Plaintiff retained its own expert, Dibattisto Associates, LLC, who conducted an inspection of the Building on April 28, 2022, and prepared an engineering report dated October 27, 2022 (the "Dibattisto Report"). ECF No. 41-1 ¶¶ 9–10, 23. The Dibattisto Report likewise attributed the

5

cause of the damage to soil consolidation, stating "the settlement of the main columns in the basement was the result of soil consolidation beneath the interior support posts due to excessive moisture." ECF No. 41-1 ¶¶ 9–10; Def.'s Ex. D, ECF No. 41-1 at 282.  On or around November 11, 2022, a public adjuster retained by Plaintiff sent Defendant a copy of the Dibattisto Report. ECF No. 41-1 ¶ 9.  Four days letter, on November 15, 2022, Defendant sent Plaintiff a second letter, reaffirming its denial of coverage of Plaintiff's claim.  *Id.* ¶ 11.

Although Defendant denied Plaintiff's claim for physical damage to the Building, it is undisputed that Defendant issued Plaintiff a check, dated July 21, 2022, in the amount of $3,667.68.  *See* ECF No. 50 at 4; ECF No. 57 at 5.  The face of the check provides: "Full & Final Release of Any and All Property Damage Claims—Residential Tenant Property Damage Claims." Pl.'s Ex. A, ECF No. 51-1 at 7.  According to Defendant, it issued Plaintiff a letter dated July 20, 2022, explaining that the payment was related to Plaintiff's request for coverage under the Commercial General Liability coverage of the Policy.   ECF No. 62.  Plaintiff alleges that the check was not cashed (nor did the parties negotiate the amount).  ECF No. 20 ¶ 12.  The Court discusses the import of this check below.

### D. The Instant Litigation

Plaintiff originally commenced this action in the Connecticut Superior Court.  Defendant timely removed the action to federal court and Plaintiff filed an amended complaint shortly thereafter.  *See* ECF Nos. 1, 20.  The amended complaint raises a breach of contract claim and seeks: (i) a declaration that Defendant has an obligation to pay all damages Plaintiff incurred for the claim; and (ii) an order that Defendant promptly pay Plaintiff the full value of the claim and

all associated costs.[3]  ECF No. 20 at 6.  Plaintiff also seeks compensatory damages, attorneys' fees and pre- and post-judgment interest.  *Id*. at 7.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might "affect the outcome of the [law]suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial.  It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-

---

[3] Count One of Plaintiff's amended complaint is styled as a claim for declaratory judgment.  *See* ECF No. 20 ¶¶ 17–24.  It is well-settled, however, that declaratory judgment is not an independent cause of action; it is a remedy.  *See Katz v. Esurance Prop. and Casual Ins. Co.*, No. 24-CV-955, 2025 WL 750937, at *12 (E.D.N.Y. Mar. 10, 2025).  While this would be a basis to dismiss Count One, *see id.*, Defendant has not argued for dismissal on this ground.  Thus, the Court construes Plaintiff's complaint as alleging a breach of contract claim, for which it seeks a declaratory judgment that Defendant must pay under the Policy.

movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324).  The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson*, 477 U.S. at 249.  If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

**III.     DISCUSSION**

The parties' dispute concerning Plaintiff's breach of contract claim and request for declaratory relief focuses on the language of the Policy.  For the reasons that follow, the Court finds that Plaintiff's claims are foreclosed under at least two provisions of the Policy.

A. <u>The Earth Movement Exclusion</u>

First, the Court finds that Defendant is entitled to summary judgment because the Policy's earth movement provision precludes coverage for Plaintiff's claim.

An insurance policy should be interpreted by the same general rules that govern the construction of a written contract. *Conn. Med. Ins. Co. v. Kulikowski*, 268 Conn. 1, 5 (2008). The "determinative question is the intent of the parties"—what coverage the insured "expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy." *Id.*

(quoting *Schillberg Integrated Metals Corp. v. Continental Casual Co.*, 263 Conn. 245, 267 (2003)). If the policy terms are clear and unambiguous, the policy "is to be given effect according to its terms." *Id.* (internal citation omitted). "In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Johnson v. Conn. Ins. Guar. Ass'n*, 302 Conn. 639, 643 (2011) (citing *Kulikowski*, 286 Conn. at 5–6). "The burden of proving that an exclusion applies is on the insurer, but the insured has the burden of proving that an exception to an exclusion reinstates coverage." *Capstone Building Corp. v. American Motorists Ins. Co.*, 308 Conn. 760, 788 n.24 (2013).

The Court finds that Defendant has met its burden of proving that an exclusion applies to exempt Plaintiff's claims from coverage, and Plaintiff has not demonstrated that any exceptions apply to restore coverage or otherwise rebut Defendant's showing. First, there is no genuine dispute of fact as to the cause of the damage to the Building, which the record establishes was soil consolidation. Indeed, both parties' experts inspected the Building after the April 22, 2022, incident and identified soil consolidation as the source of the damage. The EFI Report determined that the "cause of the settlement of the brick pier resulting in the movement of framing above was due to the consolidation of soils under the brick pier." ECF No. 41-1 at 163–64. Similarly, the Dibattisto Report found that "the settlement of the main columns in the basement was the result of soil consolidation beneath the interior support posts due to excessive moisture." ECF No. 41-1 at 282. There is thus no dispute that soil consolidation caused the subject damage, nor does Plaintiff proffer any evidence to suggest an alternative source. To the contrary, Plaintiff's opposition consistently acknowledges soil consolidation as the basis for the damage. *See, e.g.,* ECF No. 51

9

at 2 ("it is respectfully submitted that the consolidation was caused, not by . . . but rather by. . ."); *id.* at 3 (quoting the Dibattisto Report's conclusion that "the soil consolidation [was] due [to] saturated soil conditions"); *id.* at 4 ("we have a significant question of fact as to whether the soil consolidated (from seepage) overtime, or whether all soil was simply washed away after being exposed to thousands of gallons of water over a short period of time").

Second, the parties do not dispute that the Policy contains language excluding coverage for losses caused by earth movement and that soil consolidation falls within the scope of that exclusion. Specifically, Section 1.b. of the Policy's "Exclusions" provision provides that Defendant "will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." ECF No. 41-1 at 122. Section 1.b.(4) of the Policy then lists several excluded events, including earth movement, which it defines as "earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty." *Id.* The Policy further describes "soil conditions" as encompassing a wide range of events, including "contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface." *Id.*

The Court finds that the events identified by the parties' experts here—involving underground soil conditions and moisture—fit squarely within this category. Other courts in this district have reached similar conclusions when interpreting earth movement exclusion language nearly identical to that at issue in the instant case. *See., e.g.*, *Thurston Foods, Inc. v. Wausau Bus. Ins. Co.*, No. 3:15-CV-14 (WWE), 2019 WL 2075880, at *2 (D. Conn. Mar. 6, 2019) ("The Earth Movement exclusion language—with its references to 'earth movement,' 'soil conditions' and

'action of water under the ground surface'—indicates that the exclusion applies to conditions concerning soil or water action under the 'ground surface.'"). As there is no genuine dispute that soil consolidation caused the subject damage to Plaintiff's property and that the Policy's earth movement provision expressly bars coverage for damage related to this type of event, it is clear that the exclusion applies.

Plaintiff's argument that a genuine dispute of fact exists as to the *cause of the soil consolidation* is unavailing, as the Policy's "anti-concurrent clause" renders any alternative theory or contributing source immaterial. "Generally, anti-concurrent cause provisions are interpreted to mean that where a loss results from multiple contributing causes, coverage is excluded if the insurer demonstrates that any of the concurrent or contributing causes of loss are excluded by the policy." *Thurston Foods, Inc.*, 2019 WL 2075880, at *3 (citing *7001 East 71st Street, LLC v. Continental Cas. Co.*, 739 F. App'x 37, 40 (2d Cir. 2018)); *see also Alamia v. Nationwide Mut. Fire Ins. Co.*, 495 F. Supp. 2d 362, 368 (S.D.N.Y. 2007) (explaining that anti-concurrent clause excludes coverage for damage caused by an excluded peril even when events covered by the insurance policy contribute to the damage). Numerous state and federal courts have enforced anti-concurrent clauses, finding them neither ambiguous nor unconscionable. *See Thurston Foods, Inc.*, 2019 WL 2075880, at *5; *Union Street Furniture and Carpet, Inc. v. Peerless Indem. Ins. Co.*, No. FST-CV-085008699-S, 2013 WL 3871395, at *6 (Conn. Super. Ct. July 3, 2013) (the anti-concurrent clause "acknowledges that situations may arise where a loss or damage has more than one cause" and "if one of the causes is an excluded cause the insurer will not pay even if one or more of the other causes is a covered cause.").

Here, Plaintiff hypothesizes—without pointing to any evidence in the record—several theories for the soil consolidation, ranging from a sudden pipe burst to a leak from a water heater,

11

among other possibilities. *See* ECF No. 50 at 2, 3. But as the Court observed in *Union Street*, where an anti-concurrent clause is in effect, the sequence (or existence) of multiple causes do not matter. *Id.* at *5. The Court finds that the phrase in the Policy, "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss," ECF No. 41-1 at 124, read in conjunction with the earth movement exclusion, makes it clear that the Policy excludes coverage for damage caused by the circumstances here (soil consolidation), regardless of any contributing causes. *See Alamia*, 495 F. Supp. 2d at 368 (holding that plaintiffs could not recover under a policy containing an earth movement exclusion preceded by an anti-concurrent clause, despite their arguments that the subject damage was caused by water leaking from a broken pipe). Plaintiff has not suggested that there is an exception to that exclusion in the Policy. Accordingly, Plaintiff may not recover under the Policy and Defendant is entitled to judgment as a matter of law.

    B. The Settling Exclusion

Plaintiff's claim is also barred by the Policy's settling exclusion provision, which states that Defendant shall not pay for loss or damage caused by or resulting from "[s]ettling, crackling, shrinking or expansion." ECF No. 41-1 at 124. There do not appear to be any disputed issues of fact concerning: (i) whether there was any settling at Plaintiff's property; and (ii) whether such settling would be excluded under the plain language of the Policy. The amended complaint itself alleges that the Building sustained damage to its main structure, including the "sudden settling of a main portion," rendering it unsafe for residents. ECF No. 20 ¶ 8. Additionally, Defendant proffers evidence of Plaintiff's admissions in written discovery that settling occurred at the Building following a water leak. ECF No. 41 ¶ 24. These allegations are sufficient to demonstrate that Plaintiff's damages fall within the settling exclusion of the Policy. *See Corteau v. Tchrs. Ins. Co.*, 338 F. Supp. 3d 88, 95–96 (D. Conn. 2018) (finding that the terms of an insurance policy

12

excluding "loss caused by the settling, cracking, shrinking, bulging or expanding of a building structure" barred the plaintiff's claim where both the pleadings and expert findings attributed the subject damage to cracking). Moreover, Plaintiff does not address or oppose these arguments in its opposition brief. Thus, any defenses to the application of the settling exclusion provision are deemed waived and the Court's construes Plaintiff's silence as conceding that his claims are precluded under this provision. *See Cafasso v. Nappe*, No. 3:15-CV-920 (MPS), 2017 WL 4167746, at *5 (D. Conn. Sept. 20, 2017) (holding that a party waives an argument by failing to address it in an opposition to a motion for summary judgment).

Accordingly, Plaintiff may not recover under the Policy and Defendant is entitled to judgment as a matter of law under this additional exclusion.

### C. The Payment

Finally, the Court rejects Plaintiff's arguments that Defendant's issuance of payment to Plaintiff in the amount of $3,667.68 constitutes an admission against its interest or otherwise serves as an acceptance of Plaintiff's property damage claim. Plaintiff cites to no authority for this proposition. Additionally, although Defendant does not dispute that it issued payment to Plaintiff in this amount, Defendant clarifies in its reply brief that the check was issued pursuant to the Policy's third-party Commercial General Liability coverage—under a separate claim number— and served a different purpose than that alleged by Plaintiff—namely, to resolve third-party residential claims. Defendant cites to a letter dated July 20, 2022, which informed Plaintiff that the purpose of the payment was to resolve "claims the residential tenants had against [Plaintiff] for failure to maintain the property in a habitable condition." ECF No. 62 at 8. The letter also states that Plaintiff's "claims for [its] lost rental income, costs to effect temporary repairs and board up the building and rent reimbursement are not covered under the Commercial General Liability Policy" and reiterates that "[l]osses [Plaintiff] sustained for [its] business income and building

13

repairs have been addressed under [its] first party property coverage handled under claim 02086919." *Id.* at 7–8.  In other words, the letter makes clear that the check was issued solely to resolve the residential tenants' claims—not Plaintiff's property damage claims.  The face of the check further supports Defendant's position insofar as it reads: "Full & Final Release of Any and All Property Damage Claims—*Residential Tenant Property Damage Claims*." ECF No. 51-1 at 7 (emphasis added).  Based on these considerations—and the fact that Defendant denied Plaintiff's property damage claims twice for the well-supported reasons discussed above—the Court agrees with Defendant that no reasonable factfinder could conclude that the check was issued to Plaintiff to resolve its property damage claims and thus constituted acceptance of those claims.

### IV. CONCLUSION

For the reasons described herein, Defendant's motion for summary judgment is **GRANTED**.  The Clerk of Court is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 30th day of October 2025.

                                                                */s/ Sarala V. Nagala*
                                                                SARALA V. NAGALA
                                                                UNITED STATES DISTRICT JUDGE